HOMER ADDISON, *Plaintiff in Error,* v. STATE OF FLORIDA,
*Defendant in Error.*

En Banc.

Opinion Filed April 17, 1928.

Petition for Rehearing Denied June 2, 1928.

*W. D. Bell,* for Plaintiff in Error.

*Fred H. Davis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

BROWN, J.—While we recognize the force of plaintiff in error's contention to the contrary, we cannot bring our-

selves to believe that there was any reversible error in over-
ruling the motion to quash the indictment because of the
omission of the words "of another," when the provisions
of Sections 6063-6064, Rev. Gen. Stats., are applied. Surely
the indictment was not "so vague, indistinct and indefinite
as to mislead the accused and embarrass him in the prepara-
tion of his defense, or expose him after conviction or
acquittal to substantial danger of a new prosecution for the
same offense." The language of the indictment "with in-
tent to commit a felony, to wit: to steal, take and carry
away goods and chattels of the value of more than $50.00,
contrary to the form of the statute in such case made and
provided," follows the language of Section 5122, Rev. Gen.
Stats., as amended by Chap. 8563 of the Laws of 1921, so
closely as to indicate that the breaking and entering was
with the intent to commit grand larceny so as to come
within the operation of Sections 6063-6064 above referred
to. The word "steal" may not be technically synomymous
in meaning with the words "to commit larceny," but it is
nevertheless a very strong and significant word, and the
commonly accepted meaning of that word is very well de-
fined in the Standard Dictionary as follows: "To steal is
to commit larceny." The eighth commandment of the
decalogue merely reads: "Thou shalt not steal;" yet was
it ever doubted that it prohibited larceny of all kinds? See
Gafford v. State, 79 Fla., 581, 84 So. 602, and Fountain v.
State 109 So. 463, 92 Fla., 262. It is only under very excep-
tional circumstances that a person could be held guilty of
larceny for taking his own property, such as where the
owner takes his own goods from one who has a special prop-
erty right in them and a legal right to withhold them from
him. 36 C. J. 756, 781; Percifield v. State 111 So. 519;
Fountain v. State, 109 Sou. 453. But as a general rule, one
could hardly steal his own goods, though he might be guilty

of a trespass in taking them under certain circumstances. Ordinarily, if he steals at all, it must be the goods of another. Therefore the omission of the words "of another," while constituting a defect in the indictment, was not absolutely essential to a definition clearly indicating, for all practical purposes, all the elements of the offense of grand larceny, and could hardly have misled the accused or embarrassed him in the preparation of his defense.

But there is to our minds a technical variance in the proof not as to the indictment as actually drawn, but as to the technical effect thereof, growing out of a defect in the indictment which is more serious than the one above discussed. The general rule is that, in cases of this kind, the ownership of the building should be laid, not in the holder of the legal title where he is not in possession, but in the actual occupant—the party in the possession and control of the building, unless he is a mere servant. 9 C. J., 1044; Pells v. State, 20 Fla., 774; Leslie v. State, 35 Fla., 171, 17 So. 555; Crosky v. State, 46 Fla. 122, 35 So. 153; Davis v. State 51 Fla., 37, 44 So. 757; Potter v. State, 109 So. 91; Burns v. State, 104 So. 783; Collingsworth v. State, 113 So. 561; 4th Stand. Encyc. Prac., 601. And as stated in Sec. 137, Vol. 3, Bishops Crim. Prac., "'The ownership of the building must be alleged, and without variance proved as laid.' But the *meaning of ownership* varies with the offense. Burglary is not a disturbance to the fee of the place as realty, but to the habitable security. Therefore, in burglary, ownership means any possession which is rightful as against the burglar.'' Immediately following this, the author continues: "Section 138. Under various circumstances the ownership may be laid equally well in one person or another; as, in the master, or in the servant occupying under him. This is an important consideration, without which many of the cases will appear conflicting. In

general, possession and occupancy by the alleged owner are all that are required. While he need not own the fee, he need not even pay rent. 'It is enough that it was his actual dwelling-house at the time.' Even a possession unlawful as against the person claiming title, but lawful as against the burglar, will suffice. To illustrate, —2. Master and Servant. —— Where one as mere servant occupies a dwelling-house, the ownership is well laid in the master. Or, if the servant is in independent control, it may be laid in him, otherwise not. And it must be, if he pays rent to the master, who retains no authority over the premises." And in 9 C. J., 1044-5, it is said: "If premises are in the possession and occupancy of a tenant at the time of a burglary, the ownership may be laid in the tenant, and at common law it must be so laid or there will be a fatal variance." But we have held that the indictment is not sufficient if it omits the allegation of ownership, and merely alleges that the building referred to therein was "occupied" by a named person. Potter v. State, *supra*.

Here, the indictment alleges the breaking and entering "of a certain store building, then and there situated, to wit: a store building, the property of Punta Gorda Investment Company, a corporation organized and existing under the laws of the State of Florida, and then and there being used as a store building by R. K. Seward, doing business as the Punta Gorda Dry Goods Company," etc. Thus, by the indictment, the ownership was laid in the Punta Gorda Investment Co. It should have been laid in R. K. Seward. The evidence tends to show that the building was owned by the Investment Company, but was occupied and used as a store by R. K. Seward, doing business as the Punta Gorda Dry Goods Co. Thus, Seward was the party in possession and ownership should have been laid in him. Hence there was a variance in the proof, technically considered.

The reasons for requiring the ownership of the building to be alleged in the indictment are, as stated in Davis v. State, *supra*: "(1) For the purpose of showing in the record that the building alleged to have been broken into was not the property of the accused, inasmuch as one cannot commit the offense of breaking and entering his own building; (2) For the purpose of so identifying the offense as to protect the accused from a second prosecution for the same offense." In this latter connection, see also Potter v. State, *supra*, which shows the importance of accurate averments in matters of this kind, in order to protect the accused from a second prosecution for the same offense. However, in this case, technically defective as the indictment is, as above pointed out, yet the building is described with sufficient certainty to meet both of the purposes outlined in the Davis case. It certainly shows that the building was not the property of the accused, and it so identifies the offense and the building broken and entered as to protect the accused from a second prosecution for the same offense. Nor could the indictment in this respect have possibly misled the accused or embarrassed him in the preparation of his defense, for it alleged both the real owner and the party in actual possession.

It follows that there was no reversible error committed in overruling the motion to quash the indictment. The other assignments of error are also deemed untenable.

Judgment affirmed.

WHITFIELD, TERRELL AND STRUM, J. J., concur.

ELLIS, C. J., AND BUFORD, J., dissent.

ELLIS, C. J. (dissenting):

The plaintiff in error was convicted of breaking and entering a store building with "intent to commit a felony, to wit: To steal, take and carry away goods and chattels of the value of more than fifty ($50.00) dollars." He seeks a reversal of the judgment on writ of error.

The second assignment of error challenges the sufficiency of the indictment. A motion to quash it was ,made and overruled. The grounds of the motion were: that the indictment charged no offense; that it did not sufficiently charge the intent to commit a felony and that it does not allege the ownership of the building. All three of the grounds are argued under the second assignment of error.

The indictment, omitting venue and signature, is as follows:

"The Grand Jurors of the State of Florida, inquiring in and for the Body of the County of Charlotte, upon their oaths present, that Homer Addison, on the 3rd day of September A. D. 1926, at and in the County of Charlotte aforesaid, did break and enter a certain store building, then and there situated, to wit: a store building, the property of Punta Gorda Investment Company, a corporation organized and existing under the laws of the State of Florida, and then and there being used as a Store Building by R. K. Seward, doing business as the Punta Gorda Dry Goods Company, with intent to commit a felony, to wit: To steal, take and carry away goods and chattels of the value of more than fifty ($50.00) dollars, contrary to the form of the Statute in such case made and provided and against the peace and dignity of the State of Florida."

The first attack on the indictment is that it is bad because it does not allege that the breaking and entering was unlawful.

The Statute, Section 5116 Revised General Statutes, denounces the crime of breaking and entering a building with

intent to commit a felony, or after having entered with such intent the breaking of such building. It is the intent with which a person breaks and enters a building or after entering with such intent breaks it which constitutes the gravamen of the offense. In either case there must exist the intent to commit a felony when a person enters a building to constitute the offense. If he breaks the building before entering the entry must be with intent to commit a felony; if he breaks the building after entering the entry must have been with such intent.

If one enters a building, such as described in the above mentioned section without breaking but with intent to commit a felony, one commits the offense denounced by Section 5117 Revised General Statutes.

The indictment in the instant case charges the offense in the language of the statute first mentioned. It charges the breaking and entering with intent to commit a felony. See Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Hollingsworth v. State, 73 Fla. 44, 75 South. Rep. 612; Mills v. State, 58 Fla. 74, 51 South. Rep. 278.

In the last case cited this Court, speaking through Mr. Justice PARKHILL, said: ''The requisite degree of certainty in an indictment must have reference to the matter to be charged and the manner or form of charging it.'' The matter to be charged in this case was the breaking and entering of the building with intent to commit a felony. The form in which such matter was to be charged could not well be cast in better or more explicit words than those of the Statute. How the accused broke the building or how he entered it would be circumstances of no importance nor would they elucidate the act charged and make it clearer to the defendant; While the unlawful intention with which the entry was made could not be more clearly expressed

or described than to say it was to "commit a felony." To say that such an entry is unlawful would be tautologous.

The second assault upon the indictment is that it fails to define the felony with the intent to commit which the accused broke and entered. On this point we are of the opinion that the words of the statute "to commit a felony" are not in themselves sufficiently clear or explicit to advise the defendant of the nature and cause of the accusation. The particular felony which it is alleged the defendant entered to commit should be named or the circumstances constituting such a felony should be set out that it might appear whether the purpose or intent with which the accused entered was indeed to commit a felony.

There are many felonies with the intent to commit which one might break and enter and it could not be said that under an accusation of breaking and entering with intent to commit a felony any one of them might be proven and secure to the accused his constitutional right to be informed of the nature and cause of the accusation against him.

It has been held that where the name of the crime intended to be committed is given the indictment need not set out its elements. See State v. Watson, 102 Iowa 651, 72 N. W. Rep. 283.

The statutes of this State upon the subject of the crime of breaking and entering are but reenactments of the common law offense of burglary with certain elements of the latter crime omitted, as the commission of the offense at night and the building entered a dwelling house. The elements retained are a breaking, an entry, the building of another and the intent to commit a felony. Thus the common law offense of burglary has been extended.

Many states hold that in addition to the allegation that the intent was to commit a felony the indictment should go

further and set forth such elements of the intended felony as would be necessary in an indictment for such felony so that the court may say whether the offense intended was a felony or not. Barnhart v. State, 154 Ind. 177, 56 N. E. Rep. 212; Draughn v. State, 76 Miss. 574, 25 South, Rep. 153; Sullivan v. State, 7 Okl. Cr. 307, 123 Pac. Rep. 569; 9 C. J. 1050; 4 R. C. L. 436.

The indictment in this case not only fails to name the particular felony which the accused intended to commit but it also fails to allege the elements of grand larceny as defined by our statute. See Sec. 5122 Revised General Statutes. The words: "Intent to commit a felony, to wit: To steal, take and carry away goods and chattels of the value of more than fifty ($50.00) dollars," is not the equivalent of an allegation that the crime intended was the felony of grand larceny because to constitute that offense the goods stolen must be the goods of another. There should be no intendments or presumptions against the accused to supply the defects of pleading.

It is much better, as this Court has often suggested, to employ the words of the statute in preparing information or indictments and not substitute others for them, but if one will not follow the language of the statute and insists upon substituting other words therefor they should at least be sufficient to clearly and definitely charge an offense and not be so uncertain as to make it necessary to invoke a presumption or intendment against the accused to clarify the language used.

The motion to quash the indictment should have been granted.

BUFORD, J., concurs.